UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDITH AYDEE GARCIA-CONSUEGRA,<br><br>       Petitioner,<br><br>  v.<br><br>NATHALIE R. ASHER, et al.,<br><br>       Respondents. | NO.  C14-1366-RAJ-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

   Petitioner Edith Aydee Garcia-Consuegra, a native and citizen of El Salvador, has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest Detention Center since March 12, 2014, under a reinstated order of removal.  *See* Dkt. 1.  An asylum officer found petitioner had a reasonable fear of return to El Salvador and referred her to an Immigration Judge ("IJ") for withholding-only proceedings, which remain pending.  Dkt. 12-1 at 3.  During her detention, she has not received an individualized bond hearing before an IJ.  *Id.*; *see also* Dkt. 14 at 14.

   Through counsel, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and writ of mandamus, seeking release from immigration detention or a bond

REPORT AND RECOMMENDATION - 1

hearing. Dkt. 1. She names as respondents Lowell Clark, warden of the Northwest Detention Center; Nathalie R. Asher, ICE Field Office Director; Daniel Ragsdale, Acting Director of ICE; Juan P. Osuna, Director of the Executive Office for Immigration Review ("EOIR"); Jeh Johnson, Secretary of the Department of Homeland Security ("DHS"), and Eric H. Holder, Jr., United States Attorney General. *Id.* Petitioner also filed a motion for preliminary injunction. Dkt. 2.

Respondents have filed a return memorandum, motion to dismiss, and opposition to petitioner's motion for preliminary injunction. Dkt. 12. They contend that Mr. Clark is the only proper respondent to this action, and accordingly, the remaining respondents should be dismissed. *Id.* They further argue that petitioner's habeas petition should be denied because her detention is statutorily authorized and she is not entitled to a bond hearing. *Id.*

For the reasons discussed below, the Court recommends that both respondents' motion to dismiss and petitioner's habeas petition be granted in part and denied in part. Ms. Asher, Mr. Ragsdale, Mr. Johnson, and Mr. Holder should be dismissed because they are not proper respondents to the habeas petition or to the petition for writ of mandamus. Petitioner is not entitled to an order of release, but she should be given an individualized bond hearing before an IJ. Accordingly, the Court recommends that EOIR be ordered to provide her with a bond hearing within 14 days of the order on this Report and Recommendation. The Court further recommends that petitioner's motion for preliminary injunction be denied as moot.

BACKGROUND

In September 2013, petitioner was removed from the United States pursuant to a Notice and Order of Expedited Removal. Dkt. 12-1 at 2. On March 13, 2014, an ICE Border Patrol Agent encountered petitioner illegally reentering the country in the Rio Grande Valley, Texas. *Id.* at 3. She was taken into custody and served with a Notice of Intent/Decision to Reinstate Prior Order. *Id.* Petitioner asserted a fear of return to El Salvador. *Id.* After interviewing

REPORT AND RECOMMENDATION - 2

1    petitioner, an asylum officer found this fear to be reasonable and referred her for withholding-

2    only proceedings. *Id.* Those proceedings are ongoing. *Id.*

3         During her detention, petitioner has requested release on bond. Dkt. 1 at 3. ICE has

4    denied her requests, and an IJ found no jurisdiction to hold a bond hearing. *Id.*; Dkt. 12-1 at 3.

5    Consequently, petitioner filed the instant habeas petition, seeking release from immigration

6    detention or a bond hearing. *See generally id.*

7                              <u>DISCUSSION</u>

8    A.    <u>Proper respondent</u>

9         Respondents contend that Ms. Asher, Mr. Ragsdale, Mr. Osuna, Mr. Johnson, and Mr.

10    Holder are improper respondents to this action and should be dismissed. As an initial matter, the

11    Court may quickly reject respondents' assertion that Mr. Osuna, Director of EOIR, be dismissed.

12    Petitioner names Mr. Osuna as the respondent to her petition for writ of mandamus because he is

13    empowered to direct the Immigration Courts to conduct a bond hearing for her. Dkt. 14 at 17;

14    *see also* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in

15    the nature of mandamus to compel an officer or employee of the United States or any agency

16    thereof to perform a duty owed to the plaintiff."); 8 C.F.R. § 1003.0(b) (discussing the powers of

17    the director of EOIR). Respondents fail to raise any argument against naming him for this

18    purpose, and accordingly Mr. Osuna should not be dismissed.

19         The Court turns now to the issue of who is a proper respondent to a habeas petition

20    brought by an immigration detainee. This "quintessentially legal question," *Vasquez v. Reno*,

21    233 F.3d 688, 693 (1st Cir. 2000), has not been decided by the Supreme Court, the Ninth

22    Circuit,[1] or any court in the Western District of Washington. As discussed below, the Court

23

24          [1] Petitioner is incorrect in asserting that the Ninth Circuit has decided this issue—both relevant Ninth Circuit cases were subsequently withdrawn. *See Armentero v. INS* (*"Armentero*

concludes that the only proper respondent to the habeas petition is Mr. Clark, the warden of the Northwest Detention Center. Thus the remaining habeas respondents should be dismissed.

      1.    <u>Legal landscape</u>

The Supreme Court most recently discussed the issue of the proper respondent to a § 2241 habeas petition in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004). The petitioner, who was designated an "enemy combatant" and detained in the Consolidated Naval Brig in Charleston, South Carolina, named the Secretary of Defense as the respondent to his petition. *Id.* at 430. The lower courts agreed that naming the Secretary was proper, rationalizing that although the warden of the naval brig exercised control of the petitioner's day-to-day activities, the Secretary maintained the legal reality of control. *Id.* at 433.

The Supreme Court disagreed. The Court began with the language of the habeas statute, which provides that the proper respondent is "the person who has custody over [the petitioner]." *Id.* at 434 (citing 28 U.S.C. § 2242); *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). Based on the "consistent use of the definite article in reference to the custodian," the Court concluded that "there is generally only one proper respondent to a given prisoner's habeas petition." *Id.*

The Court went on to reiterate its prior holding that the habeas statutes "contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Id.* at 435 (quoting *Whales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added in *Padilla*)). This is referred to as the "immediate custodian rule."

---

*I*"), 340 F.3d 1058 (9th Cir. 2003), *withdrawn by* 382 F.3d 1153 (9th Cir. 2004) (specifically directing that *Armentero I* may not be cited as precedent by or to the court); *Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003), *withdrawn sub nom Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005).

REPORT AND RECOMMENDATION - 4

1   *Id.* The Court found that "in habeas challenges to present physical confinement—'core

2   challenges'—the default rule is that the proper respondent is the warden of the facility where the

3   prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.*

4   Consequently, the Court held that the commander of the military brig was the proper respondent,

5   not the Secretary. *Id.* at 436. The Court, however, expressly left open the question of whether

6   the Attorney General is a proper respondent to a habeas petition filed by an alien detained

7   pending deportation. *Id.* at 435 n.8.

8       Lower courts answering this question have come to a variety of conclusions. The

9   majority have found that the warden of the facility where the alien is detained is the only proper

10  respondent. *See, e.g.*, *Kholyavskiy v. Achim*, 443 F.3d 946, 949-954 (7th Cir. 2006) (warden);

11  *Vasquez*, 233 F.3d at 696 (warden, unless special circumstances warrant naming the Attorney

12  General); *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994) (warden); *Nken v. Napolitano*, 607 F.

13  Supp. 2d 149, 154 (D.D.C. 2009) (same); *Bonitto v. Bureau of ICE*, 547 F. Supp. 2d 747, 751

14  (S.D. Tex. 2008) (same); *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1281 (S.D. Ala. 2008) (same);

15  *Nwabuisi v. Holder*, No. CCB-14-49, 2014 WL 992698, at *1 n.1 (D. Md. Mar. 13, 2014) (same,

16  following general approach of district courts in the Fourth Circuit); *Alonso v. Office of*

17  *Counsel/ICE*, No. 13cv02514 MJD/JJK, 2013 WL 5999485, at *2-*3 (D. Minn. Nov. 12, 2013)

18  (same, following general approach of district courts in the Eighth Circuit); *Marroquin v.*

19  *Robbins*, No. CV 12-00876-VBF (SH), 2012 WL 4815404, at *2 (C.D. Cal. Sept. 4, 2012),

20  *adopted by* 2012 WL 4814998 (C.D. Cal. Oct. 4, 2012) (same).

21      Before *Padilla* was decided, the Third Circuit in *Yi* concluded that the warden was the

22  proper respondent, explaining:

23      This is because it is the warden that has day-to-day control over the prisoner and
        who can produce the actual body. That the district director has the power to
24      release the detainees does not alter our conclusion. Otherwise, the Attorney

REPORT AND RECOMMENDATION - 5

General of the United States could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons.

24 F.3d at 507 (citations omitted).  The First Circuit came to a similar conclusion in *Vasquez*, reasoning:

In terms of identifying a proper custodian, there is no principled distinction between an alien held in a detention facility awaiting possible deportation and a prisoner held in a correctional facility awaiting trial or serving a sentence.  Since the case law establishes that the warden of the penitentiary not the Attorney General is the person who holds a prisoner in custody for habeas purposes, it would not only be illogical but also quixotic to hold that the appropriate respondent in an alien habeas case is someone other than the official having day-to-day control over the facility where the alien is being detained.

233 F.3d at 693.

Following *Padilla*, the Seventh Circuit concluded that the petitioner's attack on the constitutionality of his confinement while he was awaiting removal fell within the "core" category of habeas challenges, and that his immediate custodian—the warden of the facility where he was detained—was the only proper respondent.  *Kholyavskiy*, 443 F.3d at 952-53.  The court rejected the petitioner's assertion that the ICE Field Office Director was a proper respondent, reasoning that although she was responsible for authorizing custody, she did not maintain custody.  *Id.* at 953 (citing *Al-Marri v. Rumsfeld*, 360 F.3d 707, 711 (7th Cir. 2004)); *see also Padilla*, 542 U.S. at 440 n.13 ("As the Seventh Circuit correctly held [in *Al-Marri*], the proper respondent is the person responsible for maintaining—not authorizing—the custody of the prisoner.").

Other courts, however, have come to different conclusions.  Before *Padilla* was decided, the Sixth Circuit in *Roman* applied the immediate custodian rule but concluded that generally the

REPORT AND RECOMMENDATION - 6

1   INS District Director[2] was the proper respondent.  340 F.3d at 320; *see also Henderson v. INS*,

2   157 F.3d 106, 122-24 (2d Cir. 1998) (allowing case to proceed against INS District Director

3   absent any objection by the government); *Santiago v. U.S. INS*, 134 F. Supp. 2d 1102, 1103

4   (N.D. Cal. 2001) (INS District Director is proper respondent); *Issa v. Holder*, No. 4:11-CV-19-

5   CDL-MSH, 2011 WL 1671915, at *3 (M.D. Ga. Apr. 11, 2011), *adopted by* 2011 WL 1675277

6   (M.D. Ga. May 3, 2011) (same).  The court reasoned that the wardens of state and local facilities

7   used by the INS followed INS detention standards, were agents of the INS District Director, and

8   exercised day-to-day control over detainees only at the direction of the INS.  *Roman*, 340 F.3d at

9   320.

10          Some district courts have also approved of the Attorney General and/or the Secretary of

11   DHS as proper respondents.  *See, e.g.*, *Somir v. United States*, 354 F. Supp. 2d 215 (E.D.N.Y.

12   2005) (Attorney General is proper respondent, collecting cases from the Eastern and Southern

13   Districts of New York); *Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d 1136, 1147-51 (D. Colo.

14   2013) (at least Attorney General and Secretary of DHS are proper respondents); *Bogarin-Flores*

15   *v. Napolitano*, No. 12cv0399 JAH(WMc), 2012 WL 3283287, at *1-*2 (S.D. Cal. Aug. 10,

16   2012) (Attorney General and Secretary of DHS are proper respondents because they are "legally

17   responsible" for the petitioner's detention).  For example, in *Somir*, the court reached its

18   conclusion because the Attorney General exercises "near total control" over aliens facing

19   removal proceedings and is designated by statute as the proper respondent in petitions for review

20   brought by aliens challenging their removal orders.  354 F. Supp. 2d at 217-18.  And in a unique

21   line of cases, the District of Colorado has concluded that the immediate custodian rule does not

22   apply to habeas petitions that primarily seek a bond hearing, and therefore at least the Attorney

23

24         [2] Prior to the creation of ICE, INS District Directors performed essentially the same functions as ICE Field Office Directors.

General and Secretary of DHS are proper respondents. *See, e.g.*, *Sanchez-Penunuri*, 7 F. Supp. 3d at 1147-51.

With this legal landscape in mind, the Court turns to the questions of whether the immediate custodian rule applies here, and who should be named as the proper respondent to petitioner's habeas petition.

2.   The immediate custodian rule applies in this case

As the Supreme Court explained in *Padilla*, the immediate custodian rule applies to habeas petitions challenging present physical custody. 542 U.S. at 437-38. "[B]y its terms, the rule does not apply when a habeas petitioner challenges something other than his present physical confinement." *Id.* at 438. For example, a challenge to a detainer lodged against a habeas petitioner does not fall within the immediate custodian rule because it challenges future confinement. *Id.* (citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973)). Thus "a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Id.*

Respondents assert that the Court should follow the First, Third, Sixth, and Seventh Circuits, all of which have applied the immediate custodian rule in the immigration habeas context. Dkt. 12 at 6 (citing *Vasquez*, 233 F.3d at 689; *Yi*, 24 F.3d at 507; *Roman*, 340 F.3d at 323; and *Kholyavskiy*, 443 F.3d at 950-53). Petitioner counters that the Court should adopt the approach of courts in the District of Colorado, which have concluded that the immediate custodian rule does not apply where the petitioner is requesting a bond hearing. *See, e.g.*, *Sanchez-Penunuri*, 7 F. Supp. 3d at 1145-48. In *Sanchez-Penunuri*, for example, the court concluded that the petitioner's request for a bond hearing challenged "the government's interpretation of how it exercises its discretion," rather than the petitioner's present physical

REPORT AND RECOMMENDATION - 8

1    confinement.  *Id.* at 1146.  According to the court, the petitioner challenged "*not the manner in*

2    *which the immigration authorities exercised discretion but rather their failure to exercise*

3    *discretion in the first place.*"  *Id.* at 1148 (emphasis in original).  The *Sanchez-Penunuri* court

4    also relied on "practical considerations" in concluding that the immediate custodian rule could

5    not apply where the petitioner requested a bond hearing, namely that the warden of an

6    immigration detention facility could not grant the requested relief.  *Id.*

7            The Court agrees with respondents that the immediate custodian rule applies in this case.

8    Petitioner alleges that her prolonged detention without the opportunity for a bond hearing

9    violates the due process clause of the Fifth Amendment and the statute authorizing her detention.

10   Dkt. 1 at 8-9.  She asks respondents to show cause why she should not be released on her own

11   recognizance, and in the alternative, she seeks a court order directing respondents to provide her

12   with a bond hearing.  *Id.* at 9; *see also* Dkt. 14 at 13.  Petitioner thus attacks the constitutionality

13   of her confinement pending resolution of her withholding-only proceedings.  As such,

14   petitioner's habeas petition is a challenge to her present physical confinement, and the immediate

15   custodian rule applies.  *See Kholyavskiy*, 443 F.3d at 952-53 (immediate custodian rule applied

16   where petitioner alleged that his "excessive detention" violated his due process rights because

17   this challenge was "fundamentally no different from the typical 'core' challenged described in

18   *Padilla*, in which a prisoner seeks release from present physical confinement").

19           There is some appeal in the *Sanchez-Penunuri* court's carefully reasoned opinion,

20   however the Court does not recommend adopting its approach.  First, it would result in

21   uncertainty for habeas petitioners, many of whom proceed *pro se*, regarding the proper

22   respondent.  The holding in *Sanchez-Penunuri* is specifically tied to the fact that the "principal"

23   relief—and thus not the only relief—the petitioner sought was a bond hearing.  *See* 7 F. Supp. 3d

24   at 1146.  As in this case, many immigration habeas petitioners seek alternative remedies:  release

REPORT AND RECOMMENDATION - 9

1    or a bond hearing.  It makes little sense to base the proper respondent determination on which

2    form of relief is "principal."  This legal determination should not be such a moving target.

3        Further uncertainty is created by the *Sanchez-Penunuri* court's conclusion that the

4    immediate custodian rule did not apply because the petitioner challenged the failure to exercise

5    discretion (i.e., hold a bond hearing), rather than the manner in which direction was exercised

6    (i.e., denying bond after a hearing).  7 F. Supp. 3d at 1148.  Under this reasoning, the immediate

7    custodian rule would *not* apply when the habeas petitioner requests a bond hearing and has not

8    yet received one, but *would* apply when the habeas petitioner seeks a second bond hearing to

9    remedy deficiencies at a first hearing.  Thus it would not be sufficient to simply determine which

10   form of relief is "principal"; one would also have to delve deeper into the facts of the case and

11   the petitioner's specific complaints to determine the proper respondent.  Adopting an approach

12   with such nuances in its application will serve neither the parties to a habeas petition nor the

13   Court.

14       In contrast to the uncertainty created by the *Sanchez-Penunuri* court's approach, the

15   immediate custodian "rule is clear and easily administered."  *Vasquez*, 233 F.3d at 693.  Absent

16   unusual circumstances that may dictate a different result, the parties and the Court will have no

17   doubt regarding who should be named as a respondent to a habeas petition.  The Court will be

18   able to expeditiously reach the merits of each petition without the potential delay attendant to

19   determining, only after full briefing by the parties, that a different respondent must be named.

20   As the First Circuit has noted, applying the immediate custodian rule "is particularly helpful in

21   the rapidly evolving filed of immigration law, since it affords the courts and the parties a

22   measure of stability and predictability."  *Id.*

23       There is one other reason why the Court counsels against following *Sanchez-Penunuri*.

24   The court there based its decision in part on a concern that a petitioner's immediate custodian

REPORT AND RECOMMENDATION - 10

could not provide a bond hearing.  7 F. Supp. 3d at 1148.  While perhaps troubling in theory, this does not appear to be a practical obstacle.  As detailed above, the majority of courts have applied the immediate custodian rule and found that the warden is only the proper respondent.  These courts routinely order bond hearings when habeas petitions are granted, and there is no indication that immigration authorities fail to follow these orders.  *See, e.g.*, *Hy v. Gillen*, 588 F. Supp. 2d 122, 124-25 (D. Mass. 2008) (finding that the warden is the only proper respondent and granting petitioner's request for a bond hearing).

In sum, application of the immediate custodian rule in this case is appropriate because it "is at bottom a simple challenge to physical custody imposed by the Executive—the traditional core of the Great Writ."  *Padilla*, 542 U.S. at 441.  This conclusion promotes uniformity and consistency in the immigration habeas context.

      3.      <u>The immediate custodian is the warden of the facility where petitioner is detained</u>

In *Padilla*, the Supreme Court stated that the immediate custodian "is 'the person' with the ability to produce the prisoner's body before the habeas court."  542 U.S. at 435.  The immediate custodian has further been described as the individual having "day-to-day control" over the facility in which the petitioner is detained.  *See, e.g.*, *Kholyavskiy*, 443 F.3d at 949.  Following the weight of authority concluding that the warden is an immigration detainee's immediate custodian, *see supra* § A.1, and the reasoning in *Padilla*, the Court concludes that Mr. Clark, the warden of the Northwest Detention Center, is the proper respondent to petitioner's habeas petition.  Indeed, petitioner concedes that she named him as a respondent because he has "day-to-day control over detainees."  Dkt. 14 at 14 (quoting *Roman*, 340 F.3d at 321).

Petitioner nevertheless maintains that Ms. Asher, the ICE Field Office Director, is also a proper respondent because Ms. Asher has the authority to grant a bond hearing or authorize her release.  *Id.* at 14-15.  The Sixth Circuit has adopted this position, reasoning that the INS District

1    Director "has power over" immigration habeas petitioners and controls the wardens of the

2    facilities where they are detained. *Roman*, 340 F.3d at 320-21 (quoting *Henderson*, 157 F.3d at

3    122). But the Supreme Court in *Padilla* made clear that the "identification of the party

4    exercising legal control only comes into play when there is no immediate physical custodian with

5    respect to the challenged 'custody.'" 542 U.S. at 439. Because there is an immediate custodian

6    in this case, whether the ICE Field Office Director exercises power over the warden is irrelevant.

7    The immediate custodian is "the person responsible for maintaining—not authorizing—the

8    custody of the prisoner." *Id.* at 440 n. 13. Because Ms. Asher does not maintain petitioner's

9    custody, she is not the immediate custodian and should be dismissed from this action.

10       Similarly, the Court finds that Mr. Holder, Mr. Johnson, and Mr. Ragsdale—the Attorney

11   General, Secretary of DHS, and Acting Director of ICE, respectively—are improperly named as

12   respondents to petitioner's habeas petition. None of them are petitioner's immediate custodian,

13   and therefore they should be dismissed. *See Kholyavskiy*, 443 F.3d at 949; *Roman*, 340 F.3d at

14   322; *Vasquez*, 233 F.3d at 693; *Yi*, 24 F.3d at 507.

15       In sum, the warden of the facility where petitioner is detained is the only proper

16   respondent to petitioner's habeas petition. The Court thus recommends that Ms. Asher, Mr.

17   Holder, Mr. Johnson, and Mr. Ragsdale be dismissed.

18   B.    Merits of petitioner's habeas petition

19       Petitioner's case raises questions regarding the statutory and regulatory provisions

20   governing reinstatement of removal orders, withholding of removal, and detention of aliens

21   during removal proceedings and after removal has been ordered. The Court must decide (1)

22   whether, in light of petitioner's reinstated removal order and pending withholding of removal

23   proceedings, her current detention is authorized by 8 U.S.C. §§ 1225(b) and 1226(a), as she

24   argues, or by 8 U.S.C. § 1231(a), as respondents maintain; and (2) whether her detention

REPORT AND RECOMMENDATION - 12

comports with due process requirements.[3]  For the reasons discussed below, the Court concludes that petitioner is lawfully detained pursuant to § 1231(a); however, due process requires that she be afforded a bond hearing before an IJ where the government bears the burden of establishing she is a flight risk or danger to the community.

        1.      <u>Reinstatement and withholding-only proceedings</u>

If an alien removed pursuant to a removal order subsequently reenters the United States illegally, the original removal order may be reinstated by an authorized official.  *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en banc); 8 C.F.R. § 241.8.  To reinstate a removal order, DHS must comply with the procedures set forth in 8 C.F.R. § 241.8(a) and (b).[4]  *Oritz-Alfaro v. Holder*, 649 F.3d 955, 956 (9th Cir. 2012).  When DHS reinstates a removal order, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."  8 U.S.C. § 1231(a)(5).

Section 241.8(e), however, "creates an exception by which an alien who asserts 'a fear of returning to the country designated' in his reinstated removal order is 'immediately' referred to

---

       [3] These questions have recently been addressed in *Cerna-Anaya v. Asher*, No. 14-807-RSL, Dkt. 20 (W.D. Wash. July 29, 2014) (Donohue, M.J.) (Report and Recommendation); *Mendoza v. Asher*, No. 14-811-JCC, Dkt. 14 (W.D. Wash. Sept. 16, 2014) (Coughenour, J.); *Giron-Castro v. Asher*, No. 14-867-JLR, Dkt. 22 (W.D. Wash. Oct. 2, 2014) (Robart, J.); *Sandoval Nunez v. Johnson*, No. 14-1104-JLR, Dkt. 13 (W.D. Wash. Oct. 10, 2014) (Donohue, M.J.) (Report and Recommendation); *Rojas v. Clark*, No. 14-1323-JLR, Dkt. 11 (W.D. Wash. Nov. 7, 2014) (Theiler, M.J.) (Report and Recommendation).

       [4] These procedures include obtaining the prior order related to the alien, confirming that the alien is the same alien who was previously removed, and confirming that the alien unlawfully reentered the United States.  8 C.F.R. § 241.8(a).  An immigration officer must then give the alien written notice of the determination that the alien is subject to removal and provide him with an opportunity to make a statement contesting the determination.  8 C.F.R. § 241.8(b).  If these requirements are met, 8 C.F.R. § 241.8(c) provides that the alien "shall be removed" under the prior removal order.

REPORT AND RECOMMENDATION - 13

1   an asylum officer who must determine if the alien has a reasonable fear of persecution or torture

2   in accordance with 8 C.F.R. § 208.31." *Ortiz-Alfaro*, 694 F.3d at 956.  If the asylum officer

3   finds that the alien has not established a reasonable fear of persecution or torture, and an IJ

4   affirms this determination, the matter is returned to DHS for execution of the reinstated order of

5   removal without the opportunity to appeal to the Board of Immigration Appeals ("BIA").  8

6   C.F.R. § 208.31(g).  On the other hand, if the asylum officer makes a positive reasonable fear

7   determination, as in petitioner's case, the matter is referred to an IJ "for consideration of the

8   request for withholding of removal only."  8 C.F.R. § 208.31(e).  The IJ's decision to grant or

9   deny withholding of removal may be appealed to the BIA.  8 C.F.R. § 208.31(g)(2)(ii).

10          In withholding-only proceedings, the jurisdiction of the IJ is limited to consideration of

11   whether the alien is entitled to withholding or deferral of removal.  8 C.F.R. § 1208.2(c)(3)(i).

12   Indeed, "all parties are prohibited from raising or considering any other issues, including but not

13   limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any

14   other form of relief."  *Id.*  If the IJ grants the alien's application for withholding of removal, the

15   alien may not be removed to the country designated in the removal order but may be removed to

16   an alternate country.  *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Lanza v. Ashcroft*,

17   389 F.3d 917, 933 (9th Cir. 2004).

18          While withholding-only proceedings are pending before the IJ or the BIA, DHS cannot

19   execute a reinstated removal order.  *See Ortiz-Alfaro*, 694 F.3d at 957; 8 U.S.C. § 1231(b)(3)

20   ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides

21   that the alien's life or freedom would be threatened in that country because of the alien's race,

22   religion, nationality, membership in a particular social group, or political opinion.").

23

24

REPORT AND RECOMMENDATION - 14

1

2.        Statutory authority for immigration detention

2

As noted above, the Court must determine the statutory basis for petitioner's detention,

3

specifically whether it is governed by § 1225(b) and § 1226(a), or § 1231(a). "Where an alien

4

falls within this statutory scheme can affect whether his detention is mandatory or discretionary,

5

as well as the kind of review process available to him if he wishes to contest the necessity of his

6

detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

7

The general immigration detention statutes, 8 U.S.C. §§ 1225(b)(1)(B) and

8

1225(b)(2)(A), apply to "'applicants for admission,' such as those apprehended at the border or

9

at a port of entry." *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013) (quoting 8 U.S.C.

10

§ 1225(a)(1)); *see also* 8 C.F.R. § 1.2 ("Arriving alien means an applicant for admission coming

11

or attempting to come into the United States at a port-of-entry, or an alien seeking transit through

12

the United States at a port-of-entry . . . ."). Section 1225(b)(1)(B) provides that if an

13

immigration officer determines an arriving alien is inadmissible on the basis of a material

14

misrepresentation (8 U.S.C. § 1182(a)(6)(C)) or a lack of documentation (8 U.S.C. § 1182(a)(7)),

15

"the officer shall order the alien removed from the United States without further hearing or

16

review unless the alien indicates either an intention to apply for asylum . . . or a fear of

17

persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If an alien expresses a fear of persecution and the

18

asylum officer finds that fear credible, "the alien *shall* be detained for further consideration of

19

the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). Section

20

1225(b)(2)(A) provides in relevant part, "[I]n the case of an alien who is an applicant for

21

admission, if the examining immigration officer determines that an alien seeking admission is

22

not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a

23

proceeding under 8 U.S.C. § 1229a." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

24

REPORT AND RECOMMENDATION - 15

1    In *Rodriguez*, the Ninth Circuit found that the plaintiffs, a class of arriving aliens

2    detained pursuant to § 1225(b), had established a likelihood of success on "their claim that §

3    1225(b) must be construed to authorize only six months of mandatory detention, after which

4    detention is authorized by § 1226(a) and a bond hearing is required." 715 F.3d at 1144.  Thus

5    after six months, the statutory basis for an arriving alien's detention shifts from § 1225(b) to §

6    1226(a).  Section 1226(a) provides for discretionary detention "pending a decision on whether

7    the alien is to be removed from the United States," and authorizes ICE to release aliens on bond.

8    8 U.S.C. § 1226(a).

9    Section 1231 governs "detention, release, and removal of aliens ordered removed."  8

10   U.S.C. § 1231(a).  It authorizes detention in only two circumstances.  "*During* the removal

11   period," the Attorney General "shall" detain the alien.  8 U.S.C. § 1231(a)(2) (emphases added).

12   "*[B]eyond* the removal period," the Attorney General "may" continue to detain certain aliens

13   specified in the statute, or release them under an order of supervision.  8 U.S.C. § 1231(a)(6);

14   *Prieto-Romero*, 534 F.3d at 1059.  The "removal period" generally lasts 90 days, and it begins on

15   the latest of the following:  (1) the date the order of removal becomes final; (2) if the removal

16   order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the

17   court's final order; or (3) if the alien is detained or confined (except under an immigration

18   process), the date the alien is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).

19        3.    Petitioner's detention is governed by 8 U.S.C. § 1231(a)

20   The Ninth Circuit has not yet addressed the threshold issue raised in this habeas action:

21   whether an arriving alien who is subject to a reinstated order of removal and expresses a fear of

22   persecution is detained pursuant to § 1225(b) or § 1231(a).  Because § 1231(a) expressly governs

23   detention of aliens during and beyond the removal period, the Court concludes that the answer to

24   this question turns on whether the removal period has been triggered.  As discussed below, the

REPORT AND RECOMMENDATION - 16

Court finds that petitioner's reinstated removal order is administratively final, and therefore she

is detained pursuant to § 1231(a).

The record does not support petitioner's argument that she was initially detained as an

inadmissible arriving alien pursuant to § 1225(b).  Although she was arrested near the border,

DHS reinstated her original order of removal pursuant to § 1231(a)(5), rather than processing her

as an inadmissible arriving alien under § 1225(b).  *See* Dkt. 1-1 at 12-16.

The Ninth Circuit has not considered whether a reinstated order of removal is

administratively final despite ongoing withholding of removal proceedings, and to the Court's

knowledge, neither have any other courts of appeals.[5]  District court judges who have addressed

the issue in procedurally similar cases have come to different conclusions.  Three judges have

concluded that § 1231(a) does not apply while administrative proceedings are ongoing.  *Mendoza*

*v. Asher*, No. 14-811-JCC, Dkt. 14 (W.D. Wash. Sept. 16, 2014) (reinstated removal order was

not administratively final because withholding-only proceedings remained pending); *Uttecht v.*

*Napolitano*, No. 8:12CV347, 2012 WL 5386618, at *1-*2 (D. Neb. Nov. 1, 2012) (same); *Pierre*

*v. Sabol*, No. 1:11-CV-2184, 2012 WL 1658293, at *4 (M.D. Pa. May. 11, 2012) (same).[6]

---

[5] In *Ortiz-Alfaro*, the Ninth Circuit held that, in order to preserve judicial review over petitions challenging administrative determinations on withholding-only proceedings, "where an alien pursues reasonable fear and withholding of removal proceedings following the reinstatement of a prior removal order, the reinstated removal order does not become final until the reasonable fear of persecution and withholding of removal proceedings are complete."  694 F.3d at 958.  Because the Ninth Circuit was considering whether the reinstated removal order was *final for purposes of judicial review*, this decision is not binding on the Court's determination of whether petitioner's reinstated removal order is *administratively final*.

[6] Two other district courts have found that a petitioner who subject to a reinstated removal order but in withholding-only proceedings is detained pursuant to § 1226(a), however in both of these cases, respondents conceded that the reinstated removal order was not administratively final.  *Castillo v. ICE Field Office Director*, 907 F. Supp. 2d 1235, 1241 (W.D. Wash. 2012) (Pechman, J.) (petitioner's detention was governed by § 1226(a) where respondent conceded he was not subject to a final reinstated order of removal given that his application for withholding of removal was pending); *Lopez v. Napolitano*, No. 1:12-cv-01750

REPORT AND RECOMMENDATION - 17

1         In *Mendoza*, the court based its finding that § 1226(a) governed the petitioner's detention

2    on the district court cases that had previously decided the issue, and on its conclusion that the

3    language in *Ortiz-Alfaro* is not clearly limited to determinations of judicial review.  No. 14-811-

4    JCC, Dkt. 14 at 3-4.

5         In *Uttecht*, the court found that the date of reinstatement typically serves as the date of

6    the final order of removal, however, the petitioner's reinstated removal order was not

7    administratively final because her removal was delayed pending an administrative decision on

8    the withholding-only proceedings.  2012 WL 5386618, at *2 (citing *Pierre*, 2012 WL 1658293,

9    at *4, and *Bah v. Cangemi*, 489 F. Supp. 2d 905, 915-18 (D. Minn. 2007) (analyzing a similar

10   circumstance in which the "removal order is no longer administratively final")).  Rather, the

11   court found that "the administrative order in her case will only be final when the Board of

12   Immigration Appeals affirms the order or when the period in which such an appeal can be

13   requested expires."  *Id.* (citing 8 U.S.C. § 1101(a)(47)(B) (defining when a removal order is

14   final)).

15        In *Pierre*, the court based its decision on the overarching differences between § 1226 and

16   § 1231.  *Pierre*, 2012 WL 1658293, at *4.  The court found that § 1226 "governs detention while

17   removal proceedings are ongoing," whereas § 1231 "governs detention after removal has become

18   certain."  *Id.* (citing *Leslie v. Attorney General*, 678 F.3d 265 (3d Cir. 2012)).  Accordingly, the

19   court concluded that because petitioner's application for withholding of removal was pending

20   before an IJ, the decision on whether he will be removed from the United States had not yet been

21   made, and therefore the reinstated order of removal was not administratively final.  *Id.*

22

23   ―――――――――――――――

24   MJS (HC), 2014 WL 1091336, at *3 (E.D. Cal. Mar. 18, 2014) (same).  Thus these cases are
     not helpful to the Court's determination here.

REPORT AND RECOMMENDATION - 18

1    In contrast to *Mendoza*, *Uttecht*, and *Pierre*, the court in *Giron-Castro* concluded that the

2    petitioner's reinstated removal order was administratively final despite his pending withholding-

3    only proceedings.  No. 14-867-JLR, Dkt. 22 (W.D. Wash. Oct. 2, 2014).  The court found that

4    *Ortiz-Alfaro* did not establish whether the petitioner's reinstated removal order was

5    administratively final because that case involved the question of judicial finality.  *Id.* at 5.  The

6    court also found that the reasoning of *Uttecht* and *Pierre* was unpersuasive.

7         This Court agrees with *Giron-Castro*.  The cases concluding that reinstated removal

8    orders are not administratively final where withholding-only proceedings are pending are at odds

9    with the statute governing reinstated removal orders.  *Id.* at 5-6.  Section 1231(a)(5) provides that

10   "the prior order of removal is reinstated from its original date and is not subject to being

11   reopened or reviewed."  Thus the reinstated removal order relates back to the date of the original

12   removal order—an administratively final order—and is itself administratively final because it

13   cannot be reopened or reviewed.  Indeed, as respondents assert, even if an alien is granted

14   withholding of removal, that relief is only country specific and will have no effect on the validity

15   of the reinstated removal order.  Although such an alien can no longer be removed to the country

16   specified in the removal order, the alien can still be removed from the United States.

17        The *Uttecht* and *Pierre* decisions also conflate administrative finality of the reinstated

18   order of removal with administrative finality of the withholding-only proceedings.  Because the

19   outcome of the withholding-only proceedings does not affect the validity of the reinstated

20   removal order, these are two separate inquiries.  Moreover, reading § 1231(a)(5) in conjunction

21   with § 1231(b)(3), which prohibits removal to a country where the alien's life or freedom would

22   be threatened because of the alien's race, religion, nationality, social group membership, or

23   political opinion, does not establish that the reinstated removal order is non-final.  While §

24   1231(b)(3) puts limitations on *where* an alien may be removed, it does not disturb § 1231(a)(5)'s

REPORT AND RECOMMENDATION - 19

mandate that an alien subject to a reinstated removal order "shall be removed" from the United

States.

The Court notes that in the regulations governing reinstatement, there is an "exception"

for withholding of removal, which states:

> If an alien whose prior order of removal has been reinstated under this section
> expresses a fear of returning to the country designated in that order, the alien shall
> be immediately referred to an asylum officer for an interview to determine
> whether the alien has a reasonable fear of persecution or torture pursuant to §
> 208.31 of this chapter.

8 C.F.R. § 241.8(e).  Notably, this exception for withholding of removal does not include the

same language as the only other exception to reinstatement provided in the regulations:

> If an alien who is otherwise subject to this section has applied for adjustment of
> status under either . . . the Haitian Refugee Immigrant Fairness Act of 1998 . . . or
> . . . the Nicaraguan Adjustment and Central American Relief Act . . . , the
> provisions of [§ 1231(a)(5)] *shall not apply*.  The immigration officer *may not
> reinstate the prior order in accordance with this section unless and until a final
> decision to deny the application for adjustment has been made.*

8 C.F.R. § 241.8(d) (emphases added).  The absence of a similar prohibition on reinstatement of

the original removal order in § 241.8(e) indicates that while the exception for withholding of

removal may prevent execution of the reinstated removal order to comply with § 1231(b)(3)

(prohibiting removal to a country where the alien's life or freedom would be threatened because

of the alien's race, religion, nationality, social group membership, or political opinion), it is not

an exception to reinstatement itself.

Given the language of § 1231(a)(5) prohibiting reopening and review, the Court

concludes that petitioner's reinstated removal order was administratively final at the time it was

reinstated.  Petitioner's pending withholding-only proceedings will not affect the validity of the

reinstated removal order, and therefore they do not make the reinstated order non-final.  Because

REPORT AND RECOMMENDATION - 20

1    petitioner is subject to an administratively final order of removal, her detention is authorized by §

2    1231(a), not by § 1226(a).[7]

3         4.      <u>Petitioner is entitled to a bond hearing</u>

4        Petitioner has been detained for more than 90 days, and thus her detention falls under §

5    1231(a)(6), which entitles the government to detain aliens beyond the 90-day removal period, or

6    release them on supervision.  In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6)

7    implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's

8    removal from the United States, and does not permit "indefinite" detention.  533 U.S. 678, 701

9    (2001).  Under *Zadvydas*, "[a]n alien is entitled to habeas relief after a presumptively reasonable

10   six-month period of detention under § 1231(a)(6) only upon demonstration that the detention is

11   'indefinite'—i.e., that there is 'good reason to believe that there is no significant likelihood of

12   removal in the reasonably foreseeable future.'"  *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir.

13   2008) ("*Diouf I*") (quoting *Zadvydas*, 533 U.S. at 701).  Petitioner has not established that her

14   eight-month detention is indefinite under *Zadvydas*.

15        Nevertheless, since *Zadvydas*, the Ninth Circuit has addressed the due process

16   requirements for prolonged detentions—those which extend beyond six months but are not

17   indefinite as defined in *Zadvydas*—in the context of § 1226(a), § 1225(b), and § 1231(a).  In

18   *Casas-Castrillon*, the court held that aliens detained under § 1226(a) for a prolonged period of

19   time are entitled to receive a bond hearing and to obtain release on bond unless the government

20   proves that they are a flight risk or a danger to the community.  535 F.3d at 951.  "Because the

21   prolonged detention of an alien without an individualized determination of his dangerousness or

22
23
24

        [7] The Court recognizes that this conclusion is contrary to the Honorable Marsha J.
Pechman's decision in *Castillo*.  In *Castillo*, however, the respondents conceded that the
petitioner's reinstated removal order was not yet final.  Accordingly, Judge Pechman did not
have the opportunity to decide the threshold issue regarding administrative finality that is
contested by the parties here.

REPORT AND RECOMMENDATION - 21

flight risk would be 'constitutionally doubtful,'" the Ninth Circuit concluded "that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing." *Id.* (citation omitted, emphasis in original). In *Rodriguez*, the Ninth Circuit came to a similar conclusion with respect to § 1225(b). 715 F.3d at 1144 (mandatory provisions of § 1225(b) expire after six months and detention authority shifts to § 1226(a)).

In *Diouf v. Napolitano* ("*Diouf II*"), the court extended these requirements to aliens detained under § 1231(a)(6), holding "that an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community." 634 F.3d 1081, 1082 (9th Cir. 2011). Specifically, the court held that the government must provide a bond hearing before an IJ to aliens who are denied release in their six-month DHS custody reviews and whose release or removal is not imminent. *Id.* at 1091-92 ("When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."); *see also id.* at 1092 n.13 ("As a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months.").

In reaching its holding, the Ninth Circuit rejected the government's argument that the "important interest" at stake—freedom from prolonged detention—was less for aliens detained while seeking collateral judicial review of administratively final orders of removal as compared to those seeking direct review. *Id.* at 1087. The Ninth Circuit also emphasized that while the government's interest in "ensuring that aliens are available for removal if their legal challenges do not succeed" may be "marginally greater" with respect to aliens detained under § 1231(a)(6) than those detained under § 1226(a), this interest was more appropriately considered by an IJ at

an individualized bond hearing, rather than by "categorically denying to § 1231(a)(6) detainees

the right to a bond hearing that § 1226(a) detainees already enjoy." *Id.* at 1087-88.

Under *Diouf II*, petitioner here is entitled to a bond hearing because her detention is

governed by § 1231(a)(6), she has been detained for more than six months, and her removal or

release is not imminent. *See id.* at 1082, 1091-92. The Honorable James L. Robart came to the

same conclusion in *Giron-Castro*. No. 14-867-JLR, Dkt. 22. Respondents nevertheless argue

the Court should not "extend" *Diouf II* to petitioner because there are three major distinctions

between Diouf and petitioner. As discussed below, respondents' arguments are not persuasive.[8]

First, respondents argue this case is distinguishable from *Diouf II* because Diouf was

ordered removed after overstaying his student visa and could collaterally challenge the removal

order through an application to reopen the removal proceedings, whereas petitioner's prior order

of removal has been reinstated and he cannot challenge the underlying order. The Ninth Circuit,

however, has made clear that "[r]egardless of the stage of the proceedings, the same important

interest is at stake—freedom from prolonged detention." *Id.* at 1087.

Respondents next assert that petitioner's case is distinguishable from *Diouf II* because

Diouf had never been previously removed from the United States, while petitioner has been

removed before. According to respondents:

> The government's interest in detaining criminal aliens previously removed and
> who have illegally reentered the United States, though no less important than its
> interest in detaining aliens with administratively final orders of removal who have
> not been previously removed, nonetheless presents qualitatively different
> concerns than those addressed in *Diouf II*. *See Diouf II*, 634 F.3d at 1088 ("It is
> far from certain that § 1231(a)(6) detainees such as Diouf will be removed."). In
> the absence of careful consideration of the government's interest in the continued

---

[8] Respondents recognize that the undersigned has previously rejected their arguments
regarding the applicability of *Diouf II*. *See Cerna-Anaya*, No. 14-807-RSL, Dkt. 20 at 11-13;
*Mendoza*, No. 14-811-JCC, Dkt. 11 at 12-14; *Giron-Castro*, No. 14-867-JLR, Dkt. 17 at 14-16.
They raise these arguments again to urge the Court to reach a different conclusion and to
preserve the issue for appeal.

REPORT AND RECOMMENDATION - 23

1
2
3

detention of previously removed aliens who have illegally reentered the United States, a sweeping extension of *Diouf II*'s requirement of an individualized bond hearing for aliens being held in custody pursuant to 8 U.S.C. § 1231(a)(6) for more than 180 days after reinstatement of their prior removal order is unwarranted.

4   Dkt. 12 at 13. This argument is not well taken. The fact that it was uncertain whether Diouf

5   would be removed was only one of four reasons the Ninth Circuit gave for finding that the

6   government's interest in detaining § 1231(a)(6) detainees was not substantial enough to justify

7   denying a bond hearing. The court also found that the government has an interest in ensuring

8   that all aliens are available for removal, detention is permitted if it is found that the alien poses a

9   flight risk, and the petitions for review may take years to resolve. *Diouf II*, 634 F.3d at 1088.

10  These remaining reasons apply with full force to petitioner, and provide ample justification for

11  treating § 1231(a)(6) detainees subject to a reinstated order of removal the same way other §

12  1231(a)(6) detainees are treated.

13          Finally, respondents contend that unlike Diouf's removal order, petitioner's removal

14  order is not being judicially reviewed. Yet while petitioner's removal order itself is not being

15  removed, she is entitled to seek Ninth Circuit review of the BIA's final determination regarding

16  her withholding of removal application. Thus the Ninth Circuit's central concern in *Diouf II*—

17  prolonged detention while petitions for review are resolved—is equally applicable here.

18          The Court need not "extend" *Diouf II* to find that it governs petitioner's case. The Ninth

19  Circuit limited its holding to aliens detained under § 1231(a)(6)—not to only certain aliens

20  detained under § 1231(a)(6), as respondents suggest. Although there are some differences

21  between petitioner and Diouf, none of those differences undermine the Ninth Circuit's ultimate

22  concern that "prolonged detention under § 1231(a)(6), without adequate procedural protections,

23  would raise 'serious constitutional concerns.'" *Diouf II*, 634 F.3d at 1086 (quoting *Casas-*

24  *Castrillon*, 535 F.3d at 950). Petitioner's current prolonged detention without the opportunity for

REPORT AND RECOMMENDATION - 24

a hearing before an IJ raises such constitutional concerns. Accordingly, she is entitled to a bond hearing at which the government must establish that she is a flight risk or a danger to the community. *See id.* at 1082.

CONCLUSION

For the foregoing reasons, the Court recommends that petitioner's habeas petition, Dkt. 1, be GRANTED in part and DENIED in part, and her motion for preliminary injunction, Dkt. 2, be DENIED as moot. Petitioner is not entitled to an order of release, but she should be given an individualized bond hearing before an IJ. Accordingly, the EOIR should be ordered to provide her with a bond hearing within 14 days of the order on this Report and Recommendation.

The Court further recommends that respondents' motion to dismiss, Dkt. 12, be GRANTED in part and DENIED in part. Respondents Nathalie R. Asher, Daniel Ragsdale, Jeh Johnson, and Eric H. Holder, Jr., should be dismissed as improper respondents. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **December 16, 2014**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 19, 2014.**

*//*

*//*

*//*

*//*

REPORT AND RECOMMENDATION - 25

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 2nd day of December, 2014.

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 26